GIBBONS, The THOMAS. See Case No. 13,-922.

GIBBS (COOPER v.). See Case No. 3,194.

GIBBS (DEVLIN v.). See Case No. 3,842.

---

## Case No. 5,383.
### GIBBS v. ELLITHORP.
[1 MacA. Pat. Cas. 702.]
Circuit Court, District of Columbia. Sept., 1859.

APPLICATION FOR DESIGN PATENT—DESCRIPTION—LACHES—DEPOSITIONS IN INTERFERENCE.

[1. In an application for a design for sewing machines in the shape or configuration of the letter G, it was not necessary to describe the working machinery of the sewing machine, which was already well known.]

[2. Failure to give notice of the taking of depositions in interference proceedings, as required by the rules of the office, does not affect the admissibility of such depositions, when the opposite party does in fact appear at the examination; and, having so appeared, he is bound to take notice of an adjournment, and, if he fail then to appear, it is his own fault.]

[3. A delay of not quite two years from the date of perfecting a design before applying for a patent is not such laches as will defeat the inventor's right, when he has not used or sold the invention for profit, or secreted it.]

[Appeal by James E. A. Gibbs from the decision of the commissioner of patents in favor of S. B. Ellithorp in interference proceedings.]

The reasons of appeal were as follows: First. For that the commissioner decided that "the testimony on Gibbs' part, and particularly his own," showed that until July, 1857, the design, which is in contest, "was vague, but an idea, and unreduced to a tan-

gible form;" whereas the testimony, together with the exhibit by which it is illustrated and sustained, fully and clearly give evidence that the design claimed by Gibbs had, long before the period at which the office dates it, been reduced to form quite as tangible and perfect, if regarded only as a design, as that which it received at the period referred to; and therefore his decision was erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Second. For that the commissioner decided that the testimony does not sustain the claim to the invention of the design in question by Gibbs at an earlier date than July, 1857; whereas it appears fully, clearly, and incontestably from the evidence that the said invention, if regarded only as a design, irrespective of the special details of its satisfactory adaptation to actual practice, was complete and reduced to tangible form during the spring of 1856, and therefore his decision was erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Third. For that the commissioner in his decision not only accepted, but relied, and relied wholly, upon a certain affidavit of Francis S. Low; whereas the said affidavit, not being the testimony of a witness duly examined after notice thereof given and received, and opportunity for cross-examination afforded the contesting party—but being a mere affidavit taken without any notice given or received, or any compliance with the rules of the office—is clearly ex parte evidence, not entitled to a reception at the hands of the office, or to any consideration or weight in the decision, still less to reception as a basis upon which alone to rest a decision; and therefore his decision was erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Fourth. For that the commissioner decided that the testimony establishes the claims of Ellithorp to the invention of the design in question "in the fall of 1855 or early in the spring of 1856;" whereas there is no legal testimony in the case which will carry, or even claims to carry back his invention of the said design to an earlier date than about August, 1856; and therefore his decision is erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Fifth. For that the commissioner decided that the testimony established the claims of Ellithorp to the practical reduction of the said design to a tangible form before its reduction to the same stage by Gibbs; whereas it is not claimed by Ellithorp in any testimony, admissible or inadmissible, that he so reduced it until some time during the year 1857—the year after it had been so reduced by Gibbs—as testified by a model filed in the United States patent office in December, 1856; and therefore his decision was erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Sixth. For that the commissioner decided that the application of Ellithorp presented the proper subject-matter of a patent; whereas, whatever view may be taken of the alleged invention set forth in said application, it should have been rejected for want of novelty or originality, for want of usefulness, for want of object or result, or for non-compliance with the law requiring a full and sufficient description of that for which a patent is desired; and therefore his decision was erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Seventh. For that the commissioner decided that Gibbs' invention, "instead of being a design within the meaning of the law, was a mechanical contrivance only;" whereas the invention claimed, being of the nature of a configuration, and that only, and neither producing nor aiming to produce any mechanical result, can be regarded only as a design, within the true intent and meaning of the law; and therefore his decision is erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Eighth. For that the commissioner implied or indirectly decided that there was no true interference between the parties in the present case; whereas, if such was the case, the interference should have been dissolved and the patent at once issued to Gibbs, according to the previous decision of the examiner; and if it were not the case, as is contended under the above reason, his decision, so far as based thereon, is erroneous, and ought to be reversed, and Gibbs' application for a patent granted. Ninth. For that the commissioner rejected Gibbs' application for a patent, when the same ought to have been allowed and granted and the letters-patent issued according to law.

A. Pollock, for appellant.

F. S. Low, for appellee.

DUNLOP. Chief Judge. The design under the third section of the act of 29th August, 1842 [5 Stat. 543], sought to be patented by the contending parties in this appeal is the shape or configuration of the Roman letter G for a sewing machine, to which configuration the working machinery of the sewing machine is to be applied; such working machinery so applied, it is said, produces a sewing machine new and useful, and makes this design worthy of a patent. No one, I think, can contend, nor do I understand Ellithorp to contend, that a drawing or casting or pattern of that letter, or of any other letter of the alphabet, is patentable alone as a new design. To give it any novelty or usefulness it must have some purpose in combination with something else. The purpose of both parties here is to apply to this configuration the working machinery of the sewing machine. That working machinery is not new. It has already been patented, and is open to the public on inquiry at the patent office. The declaration of purpose, generally, without specifying the

quo modo, gives value to the design or configuration. Any practical mechanic can then apply the working parts of the sewing machine to this figure. That is mechanical contrivance, and not design. Still, perhaps to perfect the design and make it patentable, the working machinery must be applied, or shown to the office to be capable of application; and accordingly, as the testimony proves, Ellithorp applied it as early as June or July, 1857 (see Fox's evidence), and Gibbs about the 1st of October, 1857 (see Gibbs' own deposition). F. S. Low shows that in the fall of 1857 he introduced Mr. Pollok, the attorney of Gibbs, to Ellithorp at the office of the latter in New York, when Ellithorp exhibited to Pollok one of his (Ellithorp's) sewing machines of the design above named, and illustrated its operation. Mr. Pollok has seen this deposition, by the admission of service of a copy on him, and has not been examined to contradict it.

The above remarks dispose of the objections raised in the sixth reason of appeal to the sufficiency of Ellithorp's specification of his new design. It was not incumbent on him to describe the working machinery of the sewing machine. He did not claim that; in fact, the claims both of Gibbs and Ellithorp, on examination of the papers, are in substance and almost in words the same, being confined to the configuration G as the shape of the sewing machine designed by them.

The eighth reason of appeal has no foundation in fact—the commissioner of patents, as I understand him, maintaining throughout that there is an interference.

The remaining seven reasons of appeal, in substance, raise only the question of priority of invention, and will be considered together. Who, then, first conceived or invented this "design?" Ellithorp's proof is (by F. S. Low) that "in the fall of 1855 or early in the year 1856 Ellithorp exhibited to deponent a drawing of the design, marked 'Exhibit A,' for a sewing machine, and exhibited to him a pattern and casting of the same some time in the early part of the year 1857, and also, in the same year, a completed and working sewing machine of the same design." Though this evidence is certainly vague as to precise day and date, no fair interpretation of it can carry the time beyond the month of March, 1856. The early part of the year must embrace a time before April. When we come to consider Mr. Gibbs' own deposition, it will be found more vague. The force of Low's evidence, relied on by the examiner and commissioner, is felt by Gibbs' counsel, and it is objected to as not taken according to the rules of the office. No notice, it is said, was served on Gibbs, and no proof of service certified by the officer taking the deposition and returning it to the office. The object of notice is to bring the adverse party before the ex-

amining officer, and to give him the opportunity to cross-examine the witnesses. But if the adverse party voluntarily comes and is present at the examination, and cross-examines, notice and proof of service of it are of no account. The substance is obtained, and they are mere form—technicality, and nothing more. The ninetieth rule of the patent office applies directly to such a case. When Fox, Marsh, Steenberg, and Brown were examined before Mr. Squere on the 26th of May, 1859, Mr. Pollok, the attorney of Gibbs, was present, and cross-examined these witnesses. Mr. Squere adjourned the examination till the next day, as he certifies, at 11 o'clock a. m. On the 27th, at 11 o'clock a. m., he took Mr. Low's deposition, pursuant to the adjournment. If Mr. Pollok was not present, it was his own fault; he knew of the adjournment, or was bound to take notice of it, and could have been present if he saw fit. There is therefore nothing in the objection to the admissibility of Low's evidence. John M. Fox saw the drawing of Ellithorp's design for a sewing machine before the cold weather of 1856; "it must have been in the month of August or September. Ellithorp claimed the design as his invention to be applied to his sewing machine; he had got it up for that purpose." For, (in answer to ninth cross-interrogatory), "saw a casting a few months after—six or eighth months—like the drawing shown to him by Ellithorp, and saw the casting, in combination with the working apparatus of a sewing mechanism, begun in two weeks after," which would probably bring the completed invention by Ellithorp to about the month of June or July, 1857. Gibbs, by his own account, did not complete his invention till the fall—about 1st of October, 1857. Steenberg "saw the drawing the latter part of August or 1st of September, 1856, shown to him by Ellithorp, who claimed it as his invention for a sewing machine." Brown "saw the drawing about the same time; Ellithorp claimed it as a design to be applied to a sewing machine." Upon looking at the testimony on the other side, Wilcox "saw Gibbs' drawings first in the spring or early in the summer of 1857." Savage "first saw Gibbs' perfected machine, according to his design, in Boston, last of August or 1st of September, 1857." Hannah R. H. Gibbs and Sarah M. Lockridge "saw the drawings first time in June, 1857." It does not appear that Mr. Gibbs ever showed them to anybody before that time or stated to anybody the purpose of them before that time. James E. A. Gibbs himself says: "When I was experimenting on sewing machines in February, 1856, a circular form suggested itself as more appropriate; and wishing to have a design that would distinguish the machine as my own, I adopted the form of the Roman letter G, being the first letter of my name, and a form admirably adapted to the sewing machine. These ideas develop-

ed themselves in my mind during the month of March, 1856. During the month of April or first part of May, 1856, I made various drawings of this design." Very vague this as to day and date; and he does not appear to have shown them to anybody, or to have thought them sufficiently definite or developed. When his revolving-hook patent was issued June 2d, 1857, "I turned my attention to the design letter G again, and during that month made some more sketches, to determine the size and manner of constructing the operating parts of the machine, and in July, 1857, I made a neat set of drawings on drawing paper, from which Rogers Brothers, Philadelphia, made me patterns and castings in September, 1857, and I constructed a machine with this design by the 1st of October, 1857. Exhibits 1 and 2 I know are of the old drawings made in April, 1856. I am not so certain in relation to any particular ones of the others; part of them were made in June, 1857. Exhibits 4, 9, and 10 were made the latter date, and some of the others; I know Exhibit 2 was made the first date, because it was my first idea, and I quit it as too clumsy, and worked on the other idea altogether afterwards. Exhibit 1 was made about the same time." Again, Exhibit 2: "It is of the same form as the others, but was intended to be hollow, with the cam, needle, arm, &c., on the inside, as marked by the dotted lines, the frame forming a shell or cover for the operating parts. I did not adopt this, on account of its being more clumsy. leaving less space for the cloth, and being more difficult to regulate or oil the running parts."

This vague and confused testimony would lead to the conclusion that no definite or settled drawing was made by him before June, 1857; and going back even to his first undeveloped idea would not date his imperfect drawing before the month of April, 1856. But Low dates Ellithorp's drawing before that time, to wit, in the fall of 1855 or early in the year 1856. I think, therefore, the commissioner has properly decided that Ellithorp was the prior inventor of the design in question. Both inventors seem to have perfected the invention in the year 1857—Ellithorp as early as June or July and Gibbs in October, 1857. There is nothing in the lapse of time from 1856 to 1857 to show want of diligence in either of them in perfecting their design. Gibbs made his application to the office for a patent on the 26th of April, 1859, and Ellithorp his application on the 10th of May, 1859, both of them tardily, and both, as to that matter, in pari delicto. As Mr. Gibbs sold his perfected machine on the new design in 1857 and 1858, and thus introduced it to the public, he is protected by the seventh section of the act of 1839, two years not having elapsed between the 1st of October, 1857, when he perfected it, and the 26th of April, 1859, when his application was filed in the office. I had some doubts whether

Ellithorp, in delaying his application for a patent for the design from July, 1857, when he perfected his machine on the new design, to the 10th of May, 1859, when he applied to the office for a patent, had not by laches lost the right to it; but as he did not use or sell his invention for gain, and does not appear to have secreted it, I think he is within the equity of the provision of the act of 1839, in favor of the inventor who sells. I refer on this subject to my reasoning in the case of Spear v. Belson [Case No. 13,223], lately decided by me and on file in the office.

Being of opinion that Ellithorp is the first inventor of the design, and that he perfected it in July, 1857, and that more than two years have not elapsed between that date and the 10th of May, 1859, when he applied to the office for a patent, I do this 12th day of September, 1859, affirm the decision of the commissioner of patents, of date the 5th of August, 1859, awarding Ellithorp a patent.